IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DUSTIN SAVAGE,<br><br>    Plaintiff,<br><br>v.<br><br>SERCO, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:12-CV-176 TS |

This matter is before the Court on Defendant Serco, Inc.'s Amended Motion for Summary Judgment.[1] For the reasons discussed more fully below, the Court will grant Defendant's Motion.

I. BACKGROUND

Plaintiff Dustin Savage is a veteran who retired from active military service on medical disability after being diagnosed with melanoma cancer. Plaintiff is certified and otherwise qualified to work as an air traffic controller ("ATC"). Defendant Serco, Inc. is a Virginia corporation that contracts to provide service solutions to federal agencies. As a federal contractor, Defendant provides services for the Federal Aviation Administration ("FAA"). As part of that contract, Defendant operates sixty-three FAA air traffic control towers. Two of the towers Defendant operates are located in Utah—one in Ogden, Utah and the other in Provo,

---

[1] Docket No. 30.

1

Utah. This dispute arises from Plaintiff's termination as an ATC in the Ogden air traffic control tower.

Plaintiff began employment with Defendant in March 2009. Plaintiff was hired to replace Steven Pezold, an ATC who left the Ogden tower after being called to active duty with the National Guard. When Plaintiff was hired by Defendant, Plaintiff's melanoma was in remission and he was no longer receiving active cancer treatments. Still, Plaintiff regularly attended doctor visits as part of a continuing screening process and a post-treatment clinical study in which he was participating.

The record in this case demonstrates that Defendant was aware, or should have been aware, of Plaintiff's prior cancer diagnosis. As part of his initial employment documentation, Plaintiff was required to provide a Class II Medical Certification that verified his medical fitness to perform the duties of an ATC. Because Plaintiff had previously undergone cancer treatments—including chemotherapy—he was required to provide a Special Issuance in order to perform as an ATC. In addition, Plaintiff discussed his cancer diagnosis with his direct supervisor during his tenure as an ATC in the Ogden tower.

Mr. Pezold returned from active duty in early 2010 and sought reinstatement at the Ogden tower under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Defendant was not aware that Mr. Pezold would be seeking reinstatement as it was Defendant's understanding that Mr. Pezold had resigned his position when he was called to active duty. However, after considering the matter with counsel, Defendant determined that it was obligated to return Mr. Pezold to employment with seniority credit for the time Mr. Pezold was deployed.

The FAA contract under which Defendant operated provided staffing plans that limited the number of ATCs that could be employed at any one tower. The FAA-approved staffing plan governing the Ogden control tower specified that it would be staffed with four control towers and one air traffic manager. Thus, Mr. Pezold's return resulted in an overstaffing at the Ogden control tower.

In the past, Defendant dealt with similar events of overstaffing by displacing ATCs in the order of least seniority. For example, in February 2010, Defendant was required to reduce staffing numbers in several of its towers as a result of FAA staffing plan changes in its most recent FAA contract. In a memorandum issued to all employees on February 14, 2010, Defendant outlined its seniority system and the application of that system to staffing adjustments. That memorandum states in relevant part,

> We always work very hard to keep all of our employees employed, especially during staffing reductions. If there are no volunteers in a facility to transfer to another facility then we use seniority with Serco to determine who will be displaced. When an employee is displaced, we give that employee first right-of-refusal for any job openings we have at the time. If we are unable to place an employee in a position immediately, then they are given, in writing, the first right-of-refusal for future opening for one year from the date of the termination of their employment.[2]

In mid-March 2010, Defendant notified Plaintiff that Mr. Pezold would be returning to the Ogden tower and that Plaintiff would need to either transfer to an available position in another tower or face termination. Thereafter, Plaintiff protested that he could not transfer out of Utah because of his ongoing melanoma screenings and other medical appointments. Plaintiff

---

[2] Docket No. 31 Ex. 1, at 30.

also provided other reasons for not wanting to leave Utah, including his desire to stay near his family support network and his wife's enrollment in a local pharmaceutical college.

Defendant then approached Mr. Pezold and asked if he would be willing to accept a temporary assignment to Jackson Hole, Wyoming, while they attempted to resolve the overstaffing at the Ogden tower. Mr. Pezold agreed to accept the temporary assignment and worked at the Jackson Hole control tower for nearly three months. Defendant paid Mr. Pezold a per diem to stay in Jackson Hole.

During this same three-month period, Defendant arranged for Nelson Rendon—the ATC manager for the Ogden tower—to retire early. The hope was that if Mr. Rendon retired early and an ATC from the Ogden tower was promoted, an additional position would open up at the Ogden tower and Plaintiff would not be displaced. Defendant sent out a mass email to all of its ATC employees regarding the open manager position at the Ogden tower. All of the Ogden ATCs, including Plaintiff, received an email notifying them of the opening. Unfortunately, only one ATC from the Ogden tower applied for the manager position.

After reviewing applications and interviewing potential applicants for the Ogden tower manager position, Defendant opted to hire an ATC from a different tower for the position. Defendant opted not to hire the lone Ogden tower ATC applicant because she had less experience and was otherwise less qualified than the applicant it selected. Because Defendant did not promote an ATC from within the Ogden tower, Mr. Rendon's retirement did not result in an ATC vacancy at the Ogden tower.

On April 21, 2010, Plaintiff obtained counsel and notified Defendant that he felt he was entitled under the ADA to remain in Utah because of his disability. Plaintiff also took issue with

Defendant's interpretation of the requirements of USERRA and Defendant's decision to return Mr. Pezold to the Ogden tower. Defendant responded to Plaintiff's letter but did not change its position or accede to Plaintiff's demand that he be allowed to continue employment in the Ogden tower. On June 14, 2010, Defendant notified Plaintiff that his last day of work at the Ogden tower would be June 25, 2010. In addition, Defendant reiterated its belief that it had to displace Plaintiff based on its obligation to reemploy Mr. Pezold in the Ogden tower.

Plaintiff's employment with Defendant was terminated on June 25, 2010. Mr. Pezold began working in the Ogden control tower the next day. Plaintiff was informed at that time that for the next year he would have priority consideration for any open tower position for which he applied. Plaintiff applied for the first open tower position at the Ogden tower and, in late November 2010, was rehired by Defendant at the Ogden control tower. Plaintiff resigned that position on December 22, 2010.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence

---

[3] Fed. R. Civ. P. 56(a).

5

presented.[4] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

III.  DISCUSSION

A.     EVIDENTIARY DISPUTES

As a preliminary matter, the Court will address Plaintiff's evidentiary objections. Plaintiff objects to much of the evidence provided by Defendant on the grounds that it is hearsay. Plaintiff also argues that the evidence provided is undermined by Defendant's spoliation of material evidence.

Federal Rule of Civil Procedure 56(c)(1) instructs that a party may support its factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  Rule 56(c)(2) allows a party to object to the consideration of material on summary judgment that "cannot be presented in a form that would be admissible in evidence."  The Tenth Circuit has clarified that "evidence need not be submitted 'in a form that would be admissible at trial.'"[6]  Rather, "the content or substance of the evidence must be admissible."[7]

---

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[6] *Argo v. Blue Cross & Blue Shield, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[7] *Id.* (quoting *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 2005)).

Here, Plaintiff argues that much of the evidence relied upon by Defendant is inadmissible hearsay. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[8] The evidence at issue does contain out of court statements and, at the very least, portions of the statements are offered to prove the truth of the matter asserted. Thus, the evidence does contain, at least in part, hearsay statements.

That being said, the evidence presented "may ultimately be presented at trial in an admissible form."[9] For example, the parties may call the individuals whose declarations and deposition statements have been presented to testify at trial. Such statements would be made in court and would not qualify as hearsay statements. Because such testimony would be admissible at trial, the Court rejects Plaintiff's argument that the evidence provided cannot be considered.

Plaintiff next argues that certain of Defendant's employees destroyed evidence that was material to Plaintiff's claims. Specifically, Plaintiff cites the destruction of (1) notes from phone calls with Plaintiff regarding his transfer or termination, (2) his 2009 Class II Medical Certification and Special Issuance, and (3) a "shadow file" on Plaintiff that was maintained by Plaintiff's supervisor in the Ogden tower. Based on the destruction of these documents, Plaintiff asserts that negative evidentiary inferences should be drawn against Defendant under the spoliation doctrine.

The spoliation doctrine provides that "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have

---

[8] Fed. R. Evid. 801(c).

[9] *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006).

been unfavorable to the party responsible for its destruction."[10] Thus, "[a] finding of bad faith by the party destroying the evidence is necessary to apply an adverse inference."[11]

Here, there is no evidence that Defendant acted in bad faith by destroying any of the above-referenced documentation. Defendant has provided evidence that each of these documents were destroyed in the normal operation of Defendant's business. For example, the 2009 Class II Medical Certification and Special Issuance were destroyed once Plaintiff's updated 2010 medical certification and special issuance were received. This was the common practice with all such medical forms because they contained confidential information. The same is true of the "shadow file," which was destroyed after Plaintiff's termination because it merely contained duplications of documents maintained by Defendant's human resource department. Finally, Defendant provided evidence that the notes taken during telephone conversations were the type of personal notes that are not preserved in the normal operation of its business.

After reviewing the record in this case, the Court cannot find that Plaintiff acted in bad faith in destroying the evidence at issue. Therefore, the Court will decline to apply an adverse inference under the spoliation doctrine.

B. ADA CLAIMS

Plaintiff's Complaint brings three claims under the Americans with Disability Act ("ADA"): (1) discrimination and disparate treatment, (2) failure to accommodate and failure to meaningfully engage in the interactive process, and (3) retaliation. Defendant moves for summary judgment on each of Plaintiff's claims.

---

[10] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

[11] *Smith v. Salt Lake City Corp.*, No. 2:05-CV-943 PGC, 2007 WL 582969, at *9 (D. Utah Feb. 20, 2007).

8

"'Congress enacted the [ADA] in 1990 to remedy widespread discrimination against' persons with disabilities."[12] "The purposes of the Act include, inter alia, 'provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and 'provid[ing] clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'"[13]

> [I]n order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."[14]

"If a plaintiff offers no direct evidence of discrimination, which is often the case, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*."[15]

> The *McDonnell-Douglas* framework involves three steps: (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.[16]

---

[12] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001)).

[13] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (quoting 42 U.S.C. § 12101(b)(1)–(2)).

[14] *Id.* at 1037–38 (quoting *Justice v. Crown Cork & Seal Co., Inc.*, 527 F.3d 1080, 1086 (10th Cir. 2008)).

[15] *Id.* at 1038 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

[16] *Smothers*, 740 F.3d at 538.

"A plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief."[17]

For purposes of this Motion, Defendant admits that Plaintiff is a disabled person as defined by the ADA and is qualified, with or without reasonable accommodation, to perform the essential functions of the job he held. Thus, at issue is whether Defendant discriminated against Plaintiff because of his disability.

1. DISCRIMINATION AND DISPARATE TREATMENT

Plaintiff cites *Davidson v. America Online, Inc.*[18] for the proposition that the *McDonnell-Douglas* analysis does not apply to his discrimination claim because he was otherwise qualified to perform the ATC position he held with Defendant. Plaintiff also argues that, because he is otherwise qualified to perform the essential functions of the employment position he held with Defendant, summary judgment is inappropriate on his discrimination claim. These arguments miss the mark.

In *Davidson*, the court found the *McDonnell-Douglas* analysis inapplicable "because the issue of the employer's intent ha[d] been admitted and the plaintiff ha[d] direct evidence of discrimination on the basis of his disability."[19] As stated above, the *McDonnell-Douglas* burden-shifting analysis is only applied when there is no direct evidence of discrimination. Here, Plaintiff has not provided any direct evidence of discrimination. For this reason, Plaintiff's reliance on *Davidson* is misplaced.

---

[17] *C.R. England*, 644 F.3d at 1038–39.

[18] 337 F.3d 1179 (10th Cir. 2003).

[19] *Id.* at 1189.

10

Plaintiff's discrimination claim is premised on allegations of disparate treatment. Disparate treatment in the ADA context "means treating a qualified individual with a disability differently because of the disability."[20]

Under the *McDonnell-Douglas* framework, the Court begins its "analysis by determining whether [Plaintiff] has produced enough evidence to allow a reasonable jury to conclude that he has established a prima facie case of discrimination. This burden is 'not onerous.'"[21] Plaintiff "must produce enough evidence for a reasonable jury to conclude that he was fired because of his disability."[22]

Plaintiff argues that the Court can infer that he was discriminated against because Defendant was unwilling to accommodate his disability by allowing him to stay in Utah and because Defendant treated Mr. Pezold differently from him. The Court will address Plaintiff's accommodation claim in more detail below. As to Plaintiff's claim of disparate treatment, no reasonable jury could find that Defendant's resolution of Mr. Pezold's claim of rights under USERRA supports an inference of discrimination against Plaintiff because of his disability. The evidence in this case overwhelmingly demonstrates that Plaintiff was terminated not because of his disability but rather because of his lack of seniority. Plaintiff has not provided evidence from which a reasonable juror could infer otherwise.

Even if the Court were to accept that Defendant's recognition of Mr. Pezold's USERRA rights supported an inference of discrimination, it would nevertheless finds that Defendant met

---

[20] *Id.* at 1188 (quotation marks and citation omitted).

[21] *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011) (quoting *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005)).

[22] *Id.* at 1147.

its burden of production "to articulate some legitimate, nondiscriminatory reason for firing [Plaintiff]."[23] It is undisputed that Plaintiff held the least seniority of any ATC stationed at the Ogden tower. In seeking to relocate Plaintiff or terminate his employment at the Ogden tower, Defendant acted in conformity with its practice in the past when faced with an overstaffing at an individual control tower.

Plaintiff, in turn, has not provided evidence establishing "that the legitimate reason[] offered by the [D]efendant w[as] not its true reason[], but w[as] a pretext for discrimination."[24] Plaintiff argues that "[t]here is overwhelming evidence indicating that Serco's decision was not solely motivated by USERRA," but provides no citation to evidence in the record showing some other discriminatory intent.[25] Plaintiff focuses his argument on Defendant's obligations under USERRA and asserted shortcomings in the training of Defendant's supervisors on the requirements of the ADA. These arguments do not raise questions as to Defendant's asserted good faith reliance on the requirements of USERRA.[26] Further, the Court is not persuaded that Defendant's employees' lack of training on or understanding of the requirements of the ADA manifests disparate treatment between Plaintiff and Mr. Pezold.

In short, Plaintiff has failed to meet his burden to demonstrate a prima facie case of disparate treatment or to establish that Defendant's proffered reason for termination was pretextual. Accordingly, the Court will grant judgment on this claim as a matter of law.

---

[23] *Id.* at 1149 (quotation marks and citation omitted).

[24] *Id.*

[25] Docket No. 38, at 26.

[26] *See Rydalch v. Sw. Airlines*, No. 1:09-CV-178 CW, 2011 WL 3349848, at *6–7 (D. Utah Aug. 3, 2011).

2. FAILURE TO ACCOMMODATE

"The ADA prohibits a covered employer from discriminating against a qualified individual on the basis of disability in regard to discharge of employees or other terms, conditions, and privileges of employment."[27] "Under ADA § 102(b)(5)(A), an employer can unlawfully 'discriminate' against an employee by failing to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee.'"[28]

> The Act defines "reasonable accommodation" to include:
> "(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."[29]

Plaintiff argues that Defendant violated the reasonable accommodation provision of the ADA by failing to engage in the requisite interactive process and by ultimately not providing Plaintiff employment in Utah. Defendant contends that the accommodation sought by Plaintiff was unreasonable and would cause it an undue hardship.

Plaintiff's request for an accommodation came, at the earliest, in reaction to a phone call involving Plaintiff's supervisors and a human resource representative for Defendant notifying Plaintiff that Mr. Pezold would be returning to the Ogden control tower. At that time, Plaintiff was notified that he must accept a reassignment to an open ATC position at another tower or face

---

[27] *Dinse v. Carlisle Foodservice Prods., Inc.*, 541 F. App'x 885, 888 (10th Cir. 2013) (unpublished) (internal quotations marks, citations, and alterations omitted).

[28] *C.R. England*, 644 F.3d at 1048 (quoting 42 U.S.C. § 12112(b)(5)(A)).

[29] *Id.* (quoting 42 U.S.C. § 12111(9)(A)–(B)).

termination of his employment. Plaintiff requested that he not be required to leave the Ogden tower, citing, at least in part, his ongoing melanoma screenings.

Plaintiff argues that after making this request, Defendant failed to engage in the interactive process required under the ADA.[30] The record in this case demonstrates, however, that the parties discussed Plaintiff's desire to stay in Utah and Defendant took a number of actions in an attempt to maintain Plaintiff's employment. For example, Defendant arranged for Mr. Pezold to take a temporary placement at a different control tower at Defendant's expense in order to allow Plaintiff additional time to apply for other ATC positions. Defendant also arranged for the ATC manager in the Ogden control tower to retire early in an attempt to create a vacant ATC position in the Ogden control tower. Unfortunately, neither of these undertakings was successful and eventually Plaintiff's employment was terminated.

The sine qua non of Plaintiff's accommodation claim is the question of whether Plaintiff's request for accommodation was reasonable. The accommodation Plaintiff sought was to be allowed to remain in an ATC position in the State of Utah. Defendant's contract with the FAA limited the number of ATCs that could be employed at any one control tower. Mr. Pezold's return to the Ogden tower resulted in an overstaffing of the Ogden tower. Because Plaintiff was the ATC with the least seniority in that tower, Mr. Pezold's return brought about the elimination of his position. Thus, Plaintiff's request for accommodation in effect sought a reassignment to an ATC position within Utah.

As part of the effort to accommodate an employee's disability, an employer has a duty to reassign a qualified disabled employee "but only when it is reasonable under the

---

[30] *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999).

14

circumstances."[31] "Typically, this means employers are only required to reassign employees to existing vacant positions."[32] Plaintiff "bears the burden of identifying a specific vacant position to which he could have reasonably been reassigned."[33]

Here, Plaintiff has identified no such position. Further, Defendant provided evidence that, at the time Plaintiff was terminated, there were no ATC positions available in Utah. Plaintiff contends that a vacant position would have been created in the Ogden control tower if Defendant would have promoted an ATC manager from within the Ogden tower. Plaintiff takes issue with the selection of an outside ATC to fill the ATC manager position. However, Plaintiff does not dispute that the candidate selected for the ATC manager position was the most qualified candidate to apply for the position. Plaintiff also does not dispute that, though they received notice of the position, all but one of the ATCs in the Ogden control tower declined to apply for the ATC manager position. Plaintiff also takes issue with the fact that neither he nor Mr. Pezold were considered for the ATC manager position but, again, it is undisputed that, though they had notice of the position, neither Plaintiff nor Mr. Pezold applied for the ATC manager position.

Plaintiff cites no authority to support his assertion that Defendant was obligated to consider Plaintiff, Mr. Pezold, or the remaining Ogden ATCs for a promotion for which they did not apply. Prior case law from this circuit has defined a vacant position as one that "would be available to similarly-situated nondisabled employees to apply for and obtain."[34] The Court is

---

[31] *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013).

[32] *Id.*

[33] *Id.*

[34] *Duvall v. Georgia-Pacific Consumer Prods., L.P.*, 607 F.3d 1255, 1263 (10th Cir. 2010).

15

not persuaded that employers are required under the proscriptions of the ADA to "promote an employee" in order to create an accommodating position.[35]

Plaintiff also argues that there is a genuine issue of fact as to whether, in this instance, an exception to Defendant's seniority system was a reasonable accommodation. In *U.S. Airways, Inc. v. Barnett*,[36] the United States Supreme Court made clear that the reasonable accommodation requirement of the ADA does not "trump the rules of a seniority system."[37] The Court nevertheless held that "[t]he plaintiff . . . remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts."[38]

The Court in *U.S. Airways* also provided guidance as to how a plaintiff might show that their case contains special circumstances meriting an exception to the seniority system.

> The plaintiff might show, for example, that the employer, having retained the right to change the seniority system unilaterally, exercises that right fairly frequently, reducing employee expectations that the system will be followed—to the point where one more departure, needed to accommodate an individual with a disability, will not likely make a difference. The plaintiff might show that the system already contains exceptions such that, in the circumstances, one further exception is unlikely to matter. We do not mean these examples to exhaust the kinds of showings that a plaintiff might make. But we do mean to say that the plaintiff must bear the burden of showing special circumstances that make an exception from the seniority system reasonable in the particular case. And to do so, the plaintiff must explain why, in the particular case, an exception to the employer's seniority policy can constitute a "reasonable accommodation" even though in the ordinary case it cannot.[39]

---

[35] *See Koessel*, 717 F.3d at 745.

[36] 535 U.S. 391 (2002).

[37] *Id.* at 403.

[38] *Id.* at 405.

[39] *Id.* at 405–06.

16

Plaintiff argues that Defendant lacked a formal seniority policy and that, in the case of at least one supervisor, the seniority system was not used in terms of day-to-day operations within the tower. The evidence in this case demonstrates, however, that when Defendant was faced with reductions in its staffing levels, that it operated under a well-established seniority understanding or system. Defendant's practice in prior events of an overstaffing was to displace individuals in the order of least seniority. Plaintiff has not provided evidence of a single instance where Defendant unilaterally altered the seniority system or in any way reduced the expectation that the least senior ATC would be displaced in the event of an overstaffing. Upon thorough review of the record, the Court concludes that the circumstances of this case do not merit a finding that an exception to Defendant's seniority policy would have constituted a reasonable accommodation.

In sum, the Court finds that the evidence presented in this case demonstrates that Defendant engaged with Plaintiff regarding his prior melanoma diagnosis and sought to accommodate his disability. Further, the Court finds that the accommodation that Plaintiff sought was unreasonable as a matter of law.

3.  RETALIATION

Section 503 of the ADA prohibits an employer from retaliating against a covered employee. That section states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[40]

---

[40] 42 U.S.C. § 12203(a).

"A prima facie case of retaliation under the ADA requires: (1) that an employee engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[41]  Defendant does not dispute that the first two requirements are met in this case.  Rather, Defendant argues that summary judgment is appropriate on Plaintiff's retaliation claim because Plaintiff has failed to establish that a causal connection existed between his request for accommodation and termination.  Plaintiff contends that the temporal proximity of Plaintiff's complaint and Defendant's adverse employment actions permits a presumption of causation.

To establish the third element of a prima facie case of retaliation, Plaintiff must show a causal connection between his protected activity of requesting an accommodation and Defendant's decision to terminate Plaintiff's employment.  "The 'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination.'"[42]  The Tenth Circuit has "repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to justify an inference of retaliatory motive."[43]  However, "a plaintiff may rely on temporal proximity alone only if "'the termination is very closely connected in time to the protected activity.'"[44]

---

[41] *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (brackets and quotation marks omitted).

[42] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)).

[43] *Id.* (quotation marks and citations omitted).

[44] *Id.* (quoting *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

The material adverse action of which Plaintiff complains was the requirement that he transfer to an available ATC position outside of Utah or face termination. It is undisputed that Plaintiff declined to transfer out of Utah and, as a result, was terminated. It is also undisputed that this termination occurred only three months after Plaintiff advised Defendant that he had a disability that he felt prevented him from leaving the State of Utah. That being said, this timing does not support Plaintiff's assertion that he was terminated because he requested an accommodation under the ADA.

Plaintiff received notice that he would either be transferred or terminated before he advised Defendant that his disability required him to stay near Ogden, Utah. Thus, notification of the materially adverse action precipitated Plaintiff's protected conduct. Because Plaintiff received notice of the material adverse employment action before engaging in any activity protected by the ADA, the temporal proximity of the subsequent adverse action does not support an inference that the protected activity was the cause of the materially adverse action. Further, the record in this case demonstrates that Plaintiff's request for accommodation was not the cause of his termination; rather, Plaintiff's lack of seniority was the cause of the materially adverse action. Plaintiff cannot manufacture a retaliation claim by seeking a protected action under the ADA soon after receiving notice of an adverse employment action.

In light of this timing, the Court finds that Plaintiff has failed to demonstrate that Defendant's action occurred under circumstances which give rise to an inference of unlawful discrimination.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant Serco, Inc.'s Amended Motion for Summary Judgment (Docket No. 30) is GRANTED. The Clerk of Court is instructed to enter judgment in favor of Defendant and against Plaintiff and to close this case forthwith.

DATED this 22nd day of May, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge